# Snyder, Appellant, *v.* Longmead Iron Company.

*Negligence—Master and servant—Guarding dangerous machinery—Act of May 2, 1905, P. L. 352—Contributory negligence—Nonsuit.*

1. The owner or proprietor of an industrial establishment has performed his full duty to guard dangerous machinery as required by the Act of May 2, 1905, P. L. 352, where he has furnished a suitable guard for such machinery, and where an employee is injured during the temporary absence of such guard, the master is not responsible where it does not appear that he had either actual or constructive notice of the absence of the guard in question.

2. Plaintiff, a man thirty-four years of age, who had had fifteen years' experience in manufacturing establishments, using machinery of the same general character as that in defendant's plant, and who had been employed by defendant for about five months and had acted as foreman in the department in which he was injured for at least three weeks, suffered injury in consequence of catching his hand in unguarded cogs while he was standing in a narrow space and endeavoring to oil running machinery. The defendant had supplied a proper guard for the cog wheels but it was not in place at the time of the accident. It did not appear how the guard had been removed, but the room in which it was, was under the general control of the plaintiff and it was his duty to see that it was in place. There was an experienced oiler supplied by defendant to oil the machinery. The plaintiff testified that he did not particularly notice whether the guard was on or not when he stepped into a narrow dark space behind machinery running at

full speed, and endeavored to oil it. *Held,* that a compulsory non-suit was proper.

Argued Feb. 2, 1914. Appeal, No. 195, Jan. Term, 1914, by plaintiff, from judgment of C. P. Montgomery Co., Oct. Term, 1911, No. 84, refusing to take off non-suit in case of Joseph Snyder v. Longmead Iron Co. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCH-ZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before WEAND, J.

The opinion of the Supreme Court states the facts.

The lower court entered a nonsuit which on motion it subsequently refused to take off. Plaintiff appealed.

*Errors assigned* were, inter alia, the refusal of the court to take off the nonsuit.

*Theodore Lane Bean,* for appellant.

*Franklin L. Wright,* with him *Charles T. Larzelere,* and *Nicholas H. Larzelere,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, March 2, 1914:

The court below entered a nonsuit, which it subsequently refused to take off, and the plaintiff has appealed. The appellant states five questions involved; but the consideration of only two of them is necessary to the decision of this case, i. e., (1) "Was the negligence of the defendant legally established?" (2) "Was the plaintiff guilty of contributory negligence as a matter of law in performing the action resulting in the injury in an obviously dangerous manner when there was known to him a safe method of performance?"

Joseph Snyder, the plaintiff, was thirty-four years old at the time of the accident, and had had fifteen years experience in manufacturing establishments using ma-

chinery of the same general character as that in the defendant's plant. He had been employed by the defendant for about five months, and was the foreman of the department in which he was injured, having occupied that position for at least three weeks. The plaintiff admitted that he had the right to "order the disposition of anything in that room," and in answer to the question, "The whole thing was under your control, was it not?" he answered, "Yes." He further testified that it was his duty "to see if anything was wrong," and if so, that he was "supposed to go to Mr. Thomas and get it fixed up"; the latter was his superior in general control of the works, and the last mentioned testimony related to the plaintiff's duty concerning the machinery in his room. The plaintiff stated that Mr. Thomas ordered him to keep the machinery in his department oiled, and he assumed that it was intended thereby that he should do the oiling himself, although he and his witnesses admitted that a special man was employed by the defendant, whose regular duty it was to keep the machinery oiled daily; this man subsequently went upon the stand at the plaintiff's call and testified that he had entire charge of all the oiling, that he had oiled the machine in question the night before and expected to do so on the morning of the accident. The plaintiff was injured in his first endeavor to oil; in attempting to explain how the accident happened, he said, "I walked behind the machine to oil up, and I got a pretty good position, I thought, and I leaned over like this (indicating) to oil the machine, and something grabbed this hand (indicating the left hand). I did not realize what it was, it just grabbed and started like chewing." This is as clear an account of the accident as can be found in the evidence. The witness testified he did not know how he came to be injured, but that his left hand, which was not in use at the time, in some way unknown to him, was caught in the cogs; he stated, "I do not know whether it slipped in or not." When he was asked whether the

cog-wheels were revolving rapidly or slowly, he answered, "Oh, rapidly." The plaintiff and practically all of his witnesses said that the narrow space behind the machine, in which he stood while oiling, was particularly dark on that morning, and one of his witnesses testified that the operators did not usually go back there "without the machine was stopped." The plaintiff said the cogs in question were not guarded; but upon this important point he also testified that there had been guards provided which he had seen when he first went there to work, and that afterwards he "saw them off." In answer to the question, "you say the guard was off this morning that you oiled it?" he replied, "There was no guard there when I went to oil it." He said that on the day of the accident he "did not believe that he could hardly see the guard," and in this connection he frankly admitted, "I did not pay much attention." His witness, the regular oiler, testified that there had been a protection or guard over these cog-wheels, but that it was off at the time of the accident; he further said, that it was "the company's intention to keep it there," but it was hard to keep a guard on, that the boys, including those under plaintiff's charge, would take the guards off and not replace them. There was no allegation or offer to prove that these guards were not of the proper or usual kind; nor was there any attempt to show how long the guard had been off this particular machine. Moreover, there was not any evidence sufficient to show a custom prevailing among the men in this establishment of oiling the machinery when in motion, or that it was essential or expedient so to do; and the plaintiff admitted that there was no immediate necessity for oiling at the time of the accident.

The foregoing summary of facts is as favorable to the plaintiff as the material evidence relative to the points before us warrants, and thereunder, it is apparent that both the questions involved must be determined against his right of recovery. The Act of May 2, 1905, P. L.

352, section 11, provides that all cogs shall be properly guarded; but in this case the defendant performed its full duty to the plaintiff when it furnished a suitable guard (Honor v. Albrighton, 93 Pa. 475). The defendant corporation had to act through others, and apparently the plaintiff himself was the representative fixed with the duty of reporting the removal of the guard; hence, he should have been at least ordinarily on the alert in his observations, whereas, he admits that he "did not pay much attention" in this respect; and so far as the evidence shows, the defendant had neither actual nor constructive notice of the absence of the guard in question. In view of the plaintiff's admission that he knew of the presence of the guard at a time prior to the accident, his vague and somewhat contradictory assertions about not being able to see the cogs, are of no avail; the fact remains that, although he might not have been able to see their exact location, he must have known that there were cogs in the machine, for it would have been impossible to operate the spindles without them. Furthermore, it is clear that any reasonable person would realize the obvious fact asserted by the plaintiff's witnesses that the place which Snyder entered in order to do the oiling was necessarily dangerous when the machinery was running. It is doubtful if there was any sufficient warrant for the plaintiff's attempt to oil the machine, when a regular experienced man was employed for that purpose; but assuming that he was justified in so doing, this is not a case where the injury can be attributed to the absence of instructions. The plaintiff may not have had special experience with this particular machine, but he was a mature and intelligent man, familiar in a general way with the dangers of machinery, and sufficiently experienced to act as a foreman; therefore, it was not necessary for his superior to instruct or warn him to be careful not to let his unoccupied hand slip into running machinery,—yet, under the evidence, that is the only instruction which could

have been given to avoid such an accident as here happened.

The principle of Solt v. Williamsport Radiator Co., 231 Pa. 585, controls, and the court below was right in holding that, under the facts in this case, when the plaintiff attempted to oil running machinery, he unnecessarily performed work in an obviously dangerous manner which could have been done in a perfectly safe way, by simply stopping the motion of the machine while he was working upon it (Also see, Best v. Williamsport Staple Co., 218 Pa. 202). The case at bar is quite different from Ralston v. Baldwin Locomotive Works, 240 Pa. 14, cited by the appellant. In that case no guard had been provided, the injured man was an ordinary mechanic intent upon performing an act in the course of his work which seemed to require immediate attention, and at the time of the accident he stood in a place that was in common use and not manifestly dangerous; in the present case, however, a guard had been provided, and the plaintiff was a foreman with the duty to report its absence; moreover, although he had full power to stop the machinery, he did not do so, but, when there was no immediate necessity for oiling, he went into a place which at the time was dark and manifestly dangerous for the purpose, and undertook to lubricate running machinery, doing it in such a heedless manner that he could not tell how the accident happened. The Ralston case was a close one on the question of contributory negligence and must be confined to its own facts; neither it nor any other of the authorities cited by the appellant rules the present appeal. The chief counts of the declaration in the case at bar are that "no guards of any description were placed upon the cogs," and "on the day of the accident the regular employee employed for oiling the machine was not at his regular place of employment"; but neither of these averments was sustained, and a review of the testimony convinces us there was no sufficient evidence to show negligence on the

part of the defendant; further, that the plaintiff clearly was the victim of his own contributory negligence.

The assignment of error is overruled and the judgment is affirmed.